# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# SHREVEPORT DIVISION

| | |
|---|---|
| CHRISTY COLE, on her own behalf and on behalf of her minor daughter, K.C.<br><br>Plaintiffs,<br><br>– Versus –<br><br>WEBSTER PARISH SCHOOL BOARD; JOHNNY ROWLAND, in his official capacity as Superintendent of the Webster Parish School District; and DENNY FINLEY, in his official capacity as Principal of Lakeside Junior/Senior High School,<br><br>Defendants. | NUMBER: 5:17-cv-01629<br><br>JUDGE: S. MAURICE HICKS, JR.<br><br>MAGISTRATE JUDGE: MARK L. HORNSBY |

## REPLY IN SUPPORT PLAINTIFFS'
## MOTION FOR PRELIMINARY INJUNCTION

Plaintiffs Christy Cole and K.C., through undersigned counsel, submit the following memorandum in reply to Defendants' Opposition to their Motion for Preliminary Injunction. Defendants contend that Plaintiffs' motion is moot, and that Plaintiffs are not entitled to a preliminary injunction. They are wrong on both counts.

As a threshold matter, Defendants' arguments are based on the false premise that Plaintiffs' claims are somehow mooted by the cessation of "student led prayer over the school intercom or public announcement system," which now "no longer exists." Opp'n at 3. According to Defendants, the Webster Parish School Board "denies the occurrence of such prayer" but has taken the extraordinary step of directing its schools to "cease the practice of providing such prayer." *Id*. However, Plaintiffs' Complaint alleges a longstanding custom, policy, and practice of promoting and inculcating Christian religious beliefs in a variety of ways, Compl. ¶ 2, and the practice of broadcasting prayers daily throughout schools is but one. Even if the unconstitutional practice of coercing student "volunteers" to broadcast a Christian prayer in Webster Parish schools has, in fact, stopped—a claim that is unsupported by any evidence—nothing prevents that practice from resuming at any time. More important, it is but one egregious example in a panoply of ongoing Establishment Clause violations for which a preliminary injunction remains necessary.

Moreover, Defendants' Answer admits much of the conduct of which Plaintiffs complain. They admit to providing student prayers at Central Elementary; that a ministry of Christian bodybuilders was invited to Central and spoke to students; that Lakeside Junior/Senior High School has broadcast morning prayers; that Christian-themed movies were shown in Lakeside classes; that

Lakeside graduation ceremonies included prayers and were held in churches; that a Christian rapper performed for Lakeside students; that a speaker delivered a Christian message to students during an assembly ostensibly organized to address drunken driving; and that a teacher posted Christian, religious messages on her wall at Lakeside. Rec. Doc. 9 at ¶¶ 36, 41, 43, 46, 47, 49, 55, 59, 64, 66, 68, 69, 70, 75, 76, 76, 77, 86. Defendants have not ended all of these practices, and they have denied (without any supporting evidence) that others alleged by Plaintiffs are occurring. Indeed, even if some of these practices have been temporarily suspended in response to Plaintiffs' lawsuit, the litany of violations indisputably occurring for many years, as alleged in the Complaint, undermines Defendants' unsupported and self-serving claim that there is "no threat such a practice will resume." Opp'n at 3.

## I.    PLAINTIFFS' MOTION IS NOT MOOT.

Defendants mischaracterize prayers delivered at Webster Parish Schools as "student led" and "voluntary," Answer, ¶¶ 36, 49, 64, 66, but in fact they are neither: They are official prayers organized and endorsed by school officials, and imposed on all students.  Regardless, the Webster Parish School Board's alleged decision to "prohibit prayer, whether student-led or otherwise, over the intercom or public address systems[,]" Opp'n at 5, does not moot Plaintiffs' motion. Even if the unconstitutional practice has been temporarily suspended, nothing prevents

Defendants from resuming it at any time. Defendants have not met their burden to show that the practice has been terminated effectively or permanently. Finally, prayer is but one aspect of Webster Parish Schools' promotion of religion—and specifically, one interpretation of the Christian faith.

"It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *City of Mesquite v. Aladdin's Castle, Inc.,* 455 U.S. 283, 289 (1982). Without an injunction, the "defendant is free to return to his old ways." *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953). "The test for mootness in cases such as this is a stringent one": a case will become moot only "if subsequent events made it absolutely clear that the allegedly wrongful behavior could not be reasonably be expected to recur." *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 203 (1968). "And the heavy burden of persuading the court that the challenged conduct cannot reasonably be expected to start up again lies with the party asserting mootness." *Adarand Constuctors, Inc. v. Slater*, 528 U.S. 216, 222 (2000) (per curiam) (quotation, citation, emphasis, and alterations omitted). This burden has been described as "formidable." *See, e.g., Friends of the Earth, Inc., v. Laidlaw Envtl. Servs. (TOC), Inc.,* 528 U.S. 167, 189-90 (2000) (quoting *Concentrated Phosphate*, 393 U.S. at 203).

Defendants have not met their formidable burden to show that they have permanently and forever ceased their coercive morning prayers. They fail to provide any evidence of even a temporary suspension, other than a bald assertion, that "the School Board has directed its schools and their administrators to cease the practice of providing prayer at any point during the school day." Opp'n at 3. Moreover, it is unclear how this direction was made or promulgated, whether the schools have acknowledged and received it, and whether it represents a binding policy, the violation of which would have any consequences whatsoever. The United States Supreme Court recently noted that, when the governor of Missouri announced a change in policy, that did not moot a case centered on that policy. *Trinity Lutheran Church of Columbia v. Comer*, 137 S. Ct. 2012, 2019 n. 1 (2017). Here, Defendants' unsupported assertion likewise does not carry their burden of proving that their conduct cannot reasonably be expected to recur. Nor does it begin to address numerous other forms of unconstitutional conduct alleged in the Complaint.

Defendants' mootness argument also relies on case law that is inapposite, legally and factually. For the proposition that a case may become moot if "there is no expectation that the alleged violation will recur," they cite a school racial discrimination case, *Bell v. Tensas Parish Sch. Bd.*, 185 Fed. App'x 326 (5th Cir. 2006) (per curiam).  The Fifth Circuit noted that *Bell* was originally filed in 1975,

and after 30 years, the population of Tensas Parish, the organization of the school district, and the conduct of its school board were "far different from that which existed in the 1970's[.]" The Court therefore found no expectation that segregation would be reimposed. *Id*. at 326. Here, Plaintiffs' Complaint alleges unconstitutional actions that have persisted for more than a decade, up to the present day, and there has been no change in power that would oust those who presided over many of these violations. The alleged cessation of morning prayers notwithstanding, Defendants' conduct vis-à-vis most of the other alleged violations has not otherwise changed, and there is nothing to stop Defendants from resuming their years-long sponsorship of morning prayers during this litigation.

As the Fifth Circuit has recognized, "[a] discontinuance of wrongful conduct does not alone warrant denial of injunctive relief, for the appropriateness of granting an injunction against now-discontinued acts depends upon the bona fides of the expressed intent to comply, the effectiveness of the discontinuance, and, in some cases, the character of past violation[s]." *Petersen v. Talisman Sugar Corp.,* 478 F.2d 73, 78 (5th Cir. 1973). Where "the underlying question persists and is agitated by continuing activities and program[s] … a controversy is not moot." *Id*. (internal citation omitted). Just so here—Defendant's past violations have flouted the Establishment Clause egregiously, and those violations continue presently. Indeed, the oblique nature of Defendants' admissions and refusal to acknowledge

obvious violations casts doubt on the bona fides of their expressed intent to discontinue the morning prayers. Because Defendants refuse to acknowledge some of their unconstitutional conduct, they obviously cannot be expected to have discontinued it.[1]

Defendants' reliance on a case involving the use of police chokeholds in Los Angeles is likewise misplaced. They cite *Los Angeles v. Lyons*, 461 U.S. 95 (1983), for the proposition that a "plaintiff seeking injunctive relief based on an alleged past wrong must show there is a real or immediate threat that he will be wronged again." Opp'n at 4. In that case, Adolph Lyons filed a complaint for damages, injunction, and declaratory relief in 1977, alleging that police seized him and applied a chokehold. *Lyons*, 461 U.S. at 97-98. The Court found his standing to seek the injunction depended on whether he was likely to suffer future injury from police chokeholds. *Id*. at 105. Lyons himself asserted an injunction was no longer necessary. *Id*. at 101. While the Court noted that past exposure to illegal conduct alone does not justify injunctive relief, it said that past wrongs are "evidence bearing on 'whether there is a real and immediate threat of repeated injury.'" *Id*. at 102. Here, Plaintiffs complain of a longstanding pattern, policy,

---

[1] For example, Defendants acknowledge that openly Christian organizations and speakers were invited to speak to students, with the entirely expected and predictable consequence that they proselytized students. *See* Opp'n at 6, n. 2. Instead, they claim the Webster Parish School Board did not "exercise any control over the content of the speaker's message." *Id*. However, inviting guests to speak during the school day or during school events does not insulate school officials from the responsibility to ensure that public schools remain free of official religious proselytization. *See, e.g., Lee v. Weisman,* 505 U.S. at 586 (public school could not invite clergy to deliver prayer at high-school graduation ceremony)*; McCollum v. Bd. of Educ.,* 333 U.S. 203 (1948) (school district could not permit clergy and other representatives to teach religious classes to students on campus during the school day, even where students had parental permission to attend).

practice, and custom of promoting religion to Webster Parish students schools that is *ongoing*. This years-long violation of the Establishment Clause, in a variety of different ways, supports the conclusion that it will continue or resume indefinitely unless and until an injunction is issued. Moreover, Plaintiffs have shown that a real, immediate threat that their constitutional rights will continue to be violated. Defendants' mootness argument must be rejected.

## II.    PLAINTIFFS   ARE   ENTITLED   TO   A   PRELIMINARY INJUNCTION.

Defendants claim that Plaintiffs cannot establish a substantial threat of irreparable injury and cannot establish a likelihood of success, and therefore an injunction is unwarranted. Not only are they incorrect on both counts, but they also apparently concede the other requirements for injunctive relief: The threatened injury to Plaintiffs outweighs the potential harm to Defendants, and an injunction would serve the public interest.

Defendants claim that the threat of future harm cannot be based on "isolated incidents of past conduct[.]" Opp'n at 5. To the extent that Plaintiffs alleged instances of past conduct, those examples are not isolated incidents. On the contrary, they demonstrate a "custom, policy, and practice of promoting and inculcating Christian religious beliefs and inculcating religious favoritism by sponsoring prayer, proselytizing, and other religious activities and messages throughout Webster Parish Schools." Compl. ¶ 25. These past instances by school

officials—inviting a ministry of Christian bodybuilders to proselytize elementary school students, showing Christian-oriented films to students in the classroom, calling evolution a "fairytale," holding prayer-filled graduation ceremonies in churches, promoting and participating in religious-oriented events such as Fields of Faith, inviting a Christian rapper to perform to students and proselytize, holding mandatory student assemblies featuring religious speakers who proselytized students—are not anomalies. They demonstrate a concerted effort by Defendants to promote religion that have continued to this day. Moreover, they demonstrate the extreme likelihood that this conduct will continue.

Finally, Defendants' arguments respecting the likelihood of success on the merits are unavailing. They provide examples such a student group, the Fellowship of Christian Athletes ("FCA"), whose members "clearly have the right to use the school premises at Lakeside Junior/Senior High School, before or after instructional hours." Opp'n at 7. But Plaintiffs have not contested that right, and they do not state that FCA cannot meet in Lakeside's gym. Rather, Plaintiffs complain that school officials participate in and promote FCA activities, part of a pattern of showing a clear preference for Christian religious activities. Plaintiffs also complain of an instance in which students were brought to the gym for an FCA meeting and locked inside while a sermon was delivered to the captive audience.  Compl. ¶¶ 51-52.

9

Similarly, Defendants use another strawman argument to assert that the School Board's "announcement of the after-school Fields of Faith event does not give rise to a violation of the Establishment Clause." Opp'n at 7. But Plaintiffs have alleged far more than that, explaining that,"[a]lthough 'Fields of Faith' was ostensibly student-led, Lakeside administrators and teachers—including Principal Finley—promoted the event in their official capacities at school, and attended and participated . . ." Compl. ¶ 74. And Defendants do not begin to address the many other constitutional violations that Plaintiffs have asserted. These violations are more than sufficient to establish a likelihood of success on the merits.

Accordingly, Plaintiffs' motion should be granted.

Respectfully submitted,


*/s/ Bruce Hamilton*
BRUCE HAMILTON, La. Bar No. 33170
ACLU Foundation of Louisiana
P.O. Box 56157
New Orleans, Louisiana 70156
Telephone: (504) 522-0628 | Fax: (504) 613-6511
bhamilton@laaclu.org

*AND*

Daniel Mach (D.C. Bar No.: 461652),
*Admitted Pro Hac Vice*
Heather L. Weaver (D.C. Bar No.: 495582),
*Admitted Pro Hac Vice*

10

American Civil Liberties Union Foundation
915 15th Street, NW
Washington, DC 20005
Tel: (202) 675-2330
dmach@aclu.org
hweaver@aclu.org

*Counsel for Plaintiffs*